IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

   *Plaintiff*,

v.

GREYLING CHASE,

   *Defendant*.

Criminal Action No. ELH-13-0192

Related Civil No.: ELH-16-3196

## MEMORANDUM

Greyling Chase, Petitioner, filed a "Motion For Relief From Judgment" ("Motion") under Fed. R. Crim. P. 60(d)(3), 60(b)(3), 60(b)(6) and 11(b).[1] ECF 140. In light of the content of the submission, by Order of May 26, 2016 (ECF 141), I asked Mr. Chase to advise the Court whether he wanted the Court to construe his submission as a motion under 28 U.S.C. § 2255. Mr. Chase responded (ECF 142), advising the Court of his consent to construe ECF 140 as a motion under 28 U.S.C. § 2255. *See also* ECF 143. The government filed a response in Opposition (ECF 146), along with several exhibits. Mr. Chase replied. ECF 151.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief . . . ." This is such a case; no hearing is necessary. For the reasons that follow, I shall deny the Motion.[2]

### I.    Factual and Procedural Background

On April 8, 2013, Chase and a codefendant were charged in a criminal complaint with conspiracy to possess with the intent to distribute five kilograms or more of cocaine, and

---

[1] This case was previously assigned to Judge William D. Quarles, Jr. It was reassigned to me on May 24, 2016, as a result of the retirement of Judge Quarles.

[2] On May 10, 2017, Mr. Chase advised that he has been released to Volunteers of America, Inc. *See* ECF 153.

conspiracy to possess a firearm in furtherance of a drug trafficking crime. ECF 6. Thereafter, Chase was charged in a five-count Indictment with conspiracy to commit the Hobbs Act robbery, in violation of 18 U.S.C. § 1951; conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; conspiracy to possess firearms in furtherance of a crime of violence and a drug trafficking crime; possession of firearms, in furtherance of those crimes, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a felony, in violation of 18 U.S.C. § 922(g)(1). ECF 21.

Although Chase was represented by counsel, on October 18, 2013, he filed on his own behalf correspondence and motions (ECF 53; ECF 54), including a pleading titled "Motion Requesting Notice of Prior Similar Acts of Defendant And To Suppress Character Evidence." ECF 53. Defense counsel also filed motions and submissions on Chase's behalf. *See*, *e.g.*, ECF 27; ECF 28; ECF 87; ECF 88. In February 2014, the defendant, again while represented by counsel, filed several additional motions, *pro se*. *See* ECF 59 ("Defense Motion to Dismiss for Law Enforcement Misconduct"); ECF 60 ("Motion for Discovery and For Disclosure of Government Informant's Prior Testimony").[3] In addition, in April 2014, Mr. Chase filed a "Motion to Dismiss for Selective Prosecution, Selected Enforcement." ECF 86. In that motion, Chase argued that he was targeted in a Drug Enforcement Administration sting operation, based on his race. The government responded on April 22, 2014. ECF 89. Among other things, it outlined "the sting operation at issue in this case." *Id.* at 4.

A few days later, on April 28, 2014, Mr. Chase entered a plea of guilty, pursuant to a plea agreement. ECF 90; ECF 91 (Plea Agreement); ECF 146-1 (same). In particular, Chase entered a plea of guilty to Count One of the Indictment charging conspiracy to interfere with commerce

---

[3] Magistrate Judge Sullivan held an attorney inquiry hearing on March 5, 2014, and determined that defense counsel would continue to represent Mr. Chase. ECF 63.

by robbery ("Hobbs Act Robbery"), in violation of 18 U.S.C. § 1951. *See also* ECF 115 (Plea Transcript); ECF 146-2 (Plea Transcript). Pursuant to the Plea Agreement, the parties agreed that Chase qualified as a Career Offender under U.S.S.G. § 4B1.1, with a Criminal History Category of VI. ECF 91, ¶ 7(b). In addition, the government agreed to recommend a sentence within the final advisory sentencing guidelines range. ECF 91, ¶ 10. *See* ECF 91, ¶¶ 7(b), 12, 13. Further, defendant reserved the right to appeal a sentence in excess of 188 months imprisonment, and the government reserved the right to appeal a sentence below 151 months of incarceration. *Id.* ¶ 13(b); *see also* ECF 146-2 at 7.[4]

As part of his Plea Agreement, Chase agreed to the following facts, set forth in ECF 91, ¶ 7(a):

> In March 2013, a confidential source of information (CS) working for the Baltimore Police Department (BPD) and the Drug Enforcement Administration (DEA) met with Greyling Chase, at a location in Baltimore, Maryland. During the meeting the CS proposed that he and Chase rob a drug trafficker that the CS stated would have a large quantity of narcotics. Unbeknownst to Chase, the drug trafficker was fictional. Chase agreed to commit the robbery and arranged to contact the CS at a later date.
>
> On March 29, 2013, the CS met with Chase at a location in Baltimore City to discuss the planned robbery. During the meeting, which was audio and video recorded, the CS told Chase City and that he and Chase could rob the stash house and split the stolen cocaine evenly between them. The CS asked Chase if he had a firearm available to commit the robbery and discussed that it might be necessary to kill the target trafficker. Chase confirmed that he would bring a firearm to the robbery and agreed that it might be necessary to kill the target. Chase also agreed to enlist an associate to help commit the robbery.
>
> On or about April 5, 2013, at the direction of law enforcement, the CS met with Chase and Rodney Ellis (who Chase had enlisted to assist in the robbery) at a location in Baltimore City. During the meeting, which was audio and video recorded, the CS explained how the robbery would be committed, confirmed that the target trafficker would have 10 kilograms of cocaine and reiterated that he (the

---

[4] In its Opposition (ECF 146), the government characterized the Plea Agreement as a plea pursuant to Rule 11(c)(1)(C). But, the rule is not cited in the Plea Agreement. *See* ECF 91, ¶¶ 10, 15.

CS) would keep half of the stolen cocaine and that Chase and Ellis could keep the remaining half. The CS told Ellis that it might be necessary to kill the target drug trafficker to effectuate the robbery; Ellis confirmed that he was willing to do so. The CS also asked Ellis if he had a firearm available to commit the robbery. Ellis confirmed that he would be armed.

On April 8, 2013, the CS met with Chase and Ellis at a location in Baltimore City in order to commit the planned robbery. The CS again explained how the robbery would be committed and Chase and Ellis confirmed that they were prepared to take part. The CS left the area (ostensibly to locate the target stash house) and then called Chase and Ellis a short time later to direct them to the stash house location. Chase and Ellis began driving towards the location provided at which time Chase's vehicle was stopped by law enforcement and Chase and Ellis placed under arrest. A search of Chase's vehicle recovered a Ruger P 89 9mm handgun and a FN 9.32 caliber handgun. Prior to their recovery by investigators, Ellis and Chase possessed both weapons and did so in furtherance of their conspiracy to rob a person they believed to be a drug trafficker.

Chase was subsequently Mirandized and agreed to be interviewed. During that interview, Chase admitted that he planned to participate in a robbery of 10 kilograms of cocaine and that he understood that firearms would be used to facilitate the robbery. Chase also admitted that he had obtained a firearm to use to facilitate the robbery.

The parties stipulate that Chase agreed with Ellis to steal the cocaine from the target trafficker though the use of force, violence and fear. The parties further agree that cocaine is a commodity manufactured outside the state of Maryland and which travels in interstate commerce. Therefore, the robbery of the cocaine from the source of supply of narcotics would have interfered with the interstate commercial activity of narcotics trafficking.

After Chase pleaded guilty, but prior to sentencing, the Fourth Circuit decided *United States v. Henriquez*, 757 F.3d 144 (4th Cir. 2014), which determined that Maryland's crime of First Degree Burglary is not a crime of violence. In effect, this disqualified one of the predicate convictions that had rendered Chase a Career Offender.

At the sentencing on September 17, 2014, the Court recognized that Chase did not qualify as a career offender. *See* ECF 146-3 (Sentencing Transcript) at 3, 8. Judge Quarles engaged in a lengthy discussion with both attorneys as to the impact of *Henriquez* on the Plea Agreement, which had contemplated a sentence of incarceration ranging between 151 and 188 months.

Although the Plea Agreement anticipated a Final Offense Level of 29 and a Criminal History Category of VI (ECF 91, ¶¶ 7(b), 7(c), 8), the Court found, post-*Henriquez,* that Chase's final offense level was 22, with a Criminal History Category of V, and an advisory sentencing guidelines range of 77 to 96 months. ECF 146-3 at 33. However, the Court also found that Category V "understates the seriousness of [Chase's] criminal record." *Id.* Therefore, Judge Quarles departed upward one level. *Id.* at 33-34. Judge Quarles sentenced Chase to a term of imprisonment of 105 months as to Count One. *See* ECF 106; ECF 108; ECF 146-3 (Transcript).

Petitioner then appealed his sentence to the Fourth Circuit. ECF 110. On June 2, 2015, the Court of Appeals vacated the judgment and remanded the case to the district court for resentencing. ECF 121; ECF 122. The mandate issued on June 24, 2015. ECF 123. At the resentencing held on October 8, 2015 (ECF 145), Judge Quarles resentenced Chase to 63 months of imprisonment. *See* ECF 133. This Motion followed on May 16, 2016.

### I.  Standard of Review

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence," but only on certain grounds: "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." *See also United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Collateral attack is not a substitute for direct appeal; failure to raise certain issues on direct appeal may render them procedurally defaulted on post-conviction review. *United States v. Frady*, 456 U.S. 152, 165 (1982); *accord Bousely v. United States*, 523 U.S. 614, 630 (1998). As a general rule, a petitioner who fails to raise a claim on direct appeal is barred from raising

the claim on collateral review. *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). However, this bar generally does not apply to claims pertaining to ineffective assistance of counsel. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 503–04 (2003).

Under 28 U.S.C. § 2255(b), the post-conviction court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See, e.g.*, *United States v. Lemaster*, 403 F.3d 216, 220-23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

I am mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir.

6

2013) (per curiam) (same). Nevertheless, I am satisfied that no hearing is necessary to resolve Chase's claims.

## II. The Claims

Chase alleges that the government committed a fraud on the Court. ECF 140 at 1. According to Chase, the prosecutor intentionally submitted "a fraudulent declaration," *i.e.*, the Statement of Facts in the Plea Agreement, with the intent to "mislead" the Court, in violation of Fed. R. Crim. P. 11(b). *Id.* at 1-2. Further, he claims that his defense attorney conspired with the prosecutor to misrepresent the facts and to conceal relevant facts. *Id.* at 2. Therefore, he complains that both lawyers falsely proffered the Statement of Facts as the **"'whole truth'"** at the guilty plea proceeding on April 28, 2014, and at the sentencing on September 17, 2014. ECF 140 at 6; *see also id.* at 7-12.

In addition, Chase contends that the prosecutor "deliberately suppress[ed] exculpatory evidence," in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which prejudiced defendant's preparation for trial, in violation of the Due Process Clause of the Fifth Amendment. ECF 140 at 2; *see also id.* at 12. Further, he asserts that his defense attorney conspired with the prosecutor to suppress exculpatory evidence. *Id.*

Chase also claims, *inter alia*, that "Law Enforcement" knowingly used a Black Guerrilla Family ("BGF") "gang member, under a '<u>Blood Oath</u>' obligation, to encourage [Chase], through coercion and duress, to commit crime," but failed to disclose this information. *Id.* at 4. And, Chase claims that his attorney "pressed" him to plead guilty to avoid a "'RICO INDICTMENT.'" *Id.* at 5-6; *see also id.* at 14-15. Chase further complains that a DEA Task Force Officer submitted an Affidavit for a criminal complaint to a federal magistrate judge

7

referencing a "paid informant," but the affiant was "silent on the fact that [the informant] is a 'BGF' member." ECF 140 at 4; *see also id.* at 13-14.

Additional details as to Chase's claims are included below.

### III. Discussion

#### A.

As noted, Chase contends that the prosecutor submitted "a fraudulent declaration," *i.e.*, the Statement of Facts in the Plea Agreement, for the purpose of misleading the Court, in violation of Fed. R. Crim. P. 11(b). ECF 140 at 1. According to Chase, his due process rights were violated as a result of prosecutorial misconduct. And, he maintains that his attorney conspired with the prosecutor to engage in the same misconduct.

Chase maintains that the government submitted a fraudulent declaration and misrepresented facts in his Plea Agreement of April 25, 2014. In his view, the statement of facts in the Plea Agreement to which his lawyer agreed, and as proffered in open court, was "a deliberate concealment of the '**whole truth**' . . . ." ECF 140 at 7. In particular, Chase complains, *inter alia*, that the Statement of Facts is "**absolutely void** of any mention of the '**Special Investigation Group's' July 2012** investigation of the Black Guerilla Family ("BGF") gang, as outlined, drafted, signed, dated and sworn to" by a DEA Task Force Officer to the magistrate judge. *Id.* at 8.

Further, he complains that the government deliberately failed to mention in the factual summary of the Plea Agreement that members of BGF are required to take a "Blood Oath," by which, if asked, a BGF member must, upon pain of death, assist another BGF member with the commission of the crime. *Id.* at 4. According to Chase, the prosecutor "did knowingly and intentionally misrepresent the facts in the April 25, 2014 Plea Agreement's 'Statement of Facts'

8

and concealed other relevant material facts with the intent to deceive and mislead the court . . . ." *Id.* at 2. Chase also complains that the government's response to his motion was "absolutely silent on the 'Blood Oath' issue . . . ." *Id.* at 9.

In ECF 88, filed by defense counsel on April 18, 2014, defense counsel referred to "reverse sting operations," such as what occurred in "the case at bar." *Id.* at 2. Further, the defense referred to the government's use of a paid informant, who is a known BGF member, to induce the crime, *id.* at 3-4, and also described the "oath" taken by BGF members that creates "an obligation to assist other members who make request of them," with the "penalty" that is "fatal" for failing to do so. *Id.* at 4. *See* ECF 140 at 5. Defense counsel argued entrapment and outrageous conduct on the part of the government, by way of the sting operation. ECF 88.

The record reflects that, to the extent Chase claims denial of due process based on the omission of facts, they were known to him at the time he pled guilty, including the "Blood Oath," the sting operation, and the use of a paid informant. There is no basis for relief; Chase has not demonstrated how his rights were violated.

Chase's contention that the Plea Agreement and the Statement of Facts were submitted in bad faith, in violation of Rule 11(b) of the Federal Rules of Criminal Procedure, is equally specious. *See* ECF 140 at 9-12.

Notably, Chase signed the Plea Agreement containing the Statement of Facts that he now claims was fraudulently presented by the government and his lawyer. *See* ECF 91. At his guilty plea proceeding on April 28, 2014, defendant was placed under oath (ECF 115 at 4) and advised of his obligation to tell the truth. *Id.* at 4. Before Judge Quarles accepted Chase's guilty plea, Judge Quarles conducted a rigorous plea colloquy. ECF 115. At the outset, Chase was placed under oath. *Id.* at 3.

At the plea colloquy, the government presented the Statement of Facts, consistent with the Plea Agreement. *See* ECF 146-2 at 11-14. At the outset of the statement of facts, the prosecutor stated, ECF 146-2 at 11: "Your Honor, the facts are as follows: . . . ." At the conclusion of the factual summary, the prosecutor said: "That would be the statement of facts, Your Honor." *Id.* at 14. The court then asked Mr. Chase: "Mr. Chase, did you hear what [the prosecutor] told me?" *Id.* at 14. Mr. Chase responded, "Yes, sir." *Id.* Thereafter, Judge Quarles asked Chase: "Did [the prosecutor] tell me the truth?" *Id.* The defendant replied: "Yes, sir." *Id.* at 15. The defendant also acknowledged that he was pleading guilty of his own free will and that he was pleading guilty because he is guilty. *Id.*

In *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005), the Fourth Circuit recognized that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statement." While under oath, Chase adopted the Statement of Facts and agreed that the government accurately recited the facts. ECF 142-2 at 14-15.

It is difficult to comprehend Chase's claim of misrepresentation based on facts known to him at the time of his guilty plea. The motions that Mr. Chase filed on his own behalf before he pleaded guilty, referenced earlier, make clear that he was well aware of the allegations of which he now complains. Moreover, the prosecutor never represented that he included every detail about the case in the Statement of Facts. Nor is there any requirement that, in presenting a factual summary, the government must include every detail.

Indeed, Chase misapprehends the requirements of Rule 11. The court, *inter alia*, must ensure that a plea is voluntary. Rule 11(b)(2). And, "the court must determine that there is a

10

factual basis for the plea." Rule 11(c). This does not obligate the government to present every single fact known to the government or pertinent to the case. Put another way, the government is not required to include in a statement of facts all facts known to the government. Rather, it must establish jurisdiction, the elements of the offense, and the defendant's culpability.

According to Chase, the prosecutor also "deliberately suppressed highly favorable exculpatory material evidence to coerce and secure the Petitioner's guilty plea, in violation of the Petitioner's 5th Amendment Due Process Rights . . . ." ECF 140 at 14. It appears that Petitioner is claiming that, because of the Blood Oath, he had no choice but to commit the crime. *See*, *e.g.*, ECF 140 at 12. Chase argues that such evidence was exculpatory and would have exonerated him by showing his "lack of pre-disposition to commit this crime . . . ." *Id.* at 14.

Without question, the government has a duty to disclose exculpatory evidence. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court said: "The suppression of evidence by the prosecution that is favorable to an accused violates Due Process Rights where the evidence and his material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

As the government observes, Petitioner's submissions establish that, well before his guilty plea, he had "knowledge of the inner-workings of the gang that he now claims should have been disclosed." ECF 146 at 6. Therefore, even assuming, *arguendo,* that the government failed to disclose the Blood Oath obligation or other facts as to the informant, Chase "was well aware [of] it." *Id.* With such information, Chase certainly could have crafted a defense of coercion or entrapment. Instead, he voluntarily admitted to the facts and never sought to withdraw his guilty plea.

11

**B.**

Chase presents numerous claims of ineffective assistance of trial counsel. Before addressing this argument, I pause to review the applicable standard that governs such claims.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel; performance was deficient. Second, he must show that he was prejudiced by the deficient performance. *Id.* at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, ___ U.S. ____, 133 S. Ct. 1103, 1107–8 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not

whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 690). The burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.*

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687.

The *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." This is because a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Chase contends that his attorney conspired with the prosecutor to misrepresent the facts in the Statement of Facts contained in the Plea Agreement and to conceal other relevant material facts and failed to disclose these violations to the court . . . ." ECF 140 at 2.

As the government observes, the contention is at odds with Chase's sworn statement during his guilty plea. When given the time to make additions, corrections, or modifications to the statement of facts, Chase made none. *See* ECF 146-2 at 14-15. Moreover, while under oath, Chase represented that he was satisfied with the services of his lawyer; no one had coerced him to plead guilty nor made any promises in exchange for his guilty plea; he understood the rights he was waiving; and his plea of guilty was entered freely and voluntarily. ECF 146-2.

14

I agree with the government that Chase has presented nothing more than a "bald allegation" of a conspiracy between the government and his lawyer to misrepresent facts. ECF 146 at 9. It is entirely plausible that Chase's lawyer may have informed Chase of the government's intention to pursue a RICO charge, in the absence of a guilty plea. But, such a disclosure does not amount to conspiracy with the government or ineffective assistance of counsel. Had defense counsel known of such an intention, without disclosing it, Chase might have a basis for complaint. He cannot complain because his lawyer was forthcoming.

## IV.

For the reasons set forth above, I am satisfied that the Motion is without any merit.

Unless a Certificate of Appealabilty ("COA") is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274. 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

I see no basis to issue a Certificate of Appealability.[5]

Date: September 20, 2017   /s/
Ellen L. Hollander
United States District Judge

---

[5] The district court's denial of a COA does not preclude a petitioner from seeking permission from the appellate court for a COA